J-S50003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.D.M. A/K/A S.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.V.M. | |
| | No. 222 MDA 2016 |

Appeal from the Decree Entered January 4, 2016
in the Court of Common Pleas of Tioga County Orphans' Court
at No(s): 6 OC 2015

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED JULY 06, 2016**

L.V.M. ("Mother") appeals from the decree entered on January 4, 2016, granting the petition filed by the Tioga County Department of Human Services ("DHS"), seeking to involuntarily terminate her parental rights to her dependent child, S.D.M., a/k/a S.H. ("Child"), a female born in April of 2003, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).[1]  We affirm.

The trial court set forth the relevant history in its opinion filed pursuant to Pa.R.A.P. 1925(a)(2)(1).  **See** Trial Ct. Op.,

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother's decree was translated into Russian.  In a separate decree dated and entered on January 4, 2016, the trial court also terminated the rights of Child's father, D.H. ("Father").  Father has not filed an appeal.  He is not a party to this appeal, nor has he filed a brief in this matter.

2/26/16, at 1-6 (unpaginated). We adopt the trial court's recitation for purposes of this appeal. **See id.**

As noted above, on January 4, 2016, the trial court entered the decree terminating Mother's parental rights. On January 25, 2016, Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2]

In her brief on appeal, Mother raises two questions for this Court's review, as follows:

> 1. The Dependency court sua sponte issued an order that Mother was precluded from having contact with the child until the child had therapy and the therapist stated that contact was okay. DHS failed to tell the therapist that reunification was a goal and that Mother should become engaged in therapy when it was appropriate for the child, therefore, albeit maybe accidental – reunification was never really being pursued by DHS. Subsequently, Mother traveled to Ukraine and Russia and due to financial health constraints was unable to return to the United States in a timely manner. Did the trial court abuse its discretion when it determined that [M]other has shown that she wants to relinquish her parental rights or has failed to perform her parental duties?

> 2. The child did not testify at the termination hearing and no evidence was presented that that [sic] contact with Mother is a danger to her child's physical or emotional well-being. Did the trial court abuse its discretion in determining that the best interest of the child would be served by terminating Mother's parental rights?

---

[2] On January 29, 2016, Mother filed an amended notice of appeal correcting the date of the decree on appeal from January 4, 2015, to January 4, 2016.

J-S50003-16

Mother's Brief at 2.[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d [567,] 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-55], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often

---

[3] We note that, with regard to the issues in Mother's brief, Mother's concise statement preserved only the last sentence of each of these two paragraphs. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his or her concise statement of errors complained of on appeal and the Statement of Questions Involved in his or her brief on appeal). Although Mother stated those issues somewhat differently in her concise statement, we nevertheless find that she preserved those issues for our review.

presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161[, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under Section 2511(a)(1) and (b). *See* Trial Ct. Op. at 6 (unpaginated). Section 2511(a)(1) and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

- 4 -

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). We focus on Section 2511(a)(1).

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence

of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

\* \* \*

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

[T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re C.L.G.*, 956 A.2d at 1006.

Further, regarding the definition of "parental duties," this Court has stated as follows:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

In her first issue with regard to Section 2511(a)(1), Mother contends that the trial court improperly terminated her parental rights. Mother alleges that originally, a trial court order precluded her from contacting Child. Citing *In re M.B.*, 674 A.2d 702, 705 (Pa. Super. 1996), Mother asserts that the trial court had no grave threat upon which to deny Mother any visitation with Child, and improperly placed the burden on Child and Child's counsel to initiate visitation. Mother asserts that a lack of cooperation by DHS impeded her from overcoming that order. Further, Mother claims that after she traveled to her home country, her own health and financial constraints impeded her from returning as soon as planned.

Mother likens her situation to that of an incarcerated parent and cites case law regarding incarcerated parents. Mother claims that her circumstances precluded her from fulfilling her parental duties from at least April 2014 until the filing of the termination petition, so her situation is similar to that of a prisoner who has restrictions on her ability to parent. Mother essentially argues that DHS did not make reasonable efforts to establish reunification as a goal and avoid the termination of her parental rights. *See* Mother's Brief at 13.

We find Mother's argument unavailing. Mother failed to timely challenge the initial dependency order that denied her contact with Child. Thus, she may not raise the propriety of that order in this appeal. Mother was not an incarcerated parent, and therefore, her reliance on the case law regarding incarcerated parents is inappropriate. Moreover, our Supreme Court held that the trial court is not required to consider reasonable efforts in relation to a decision to terminate parental rights under Section 2511(a)(2). *In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). This same holding is applicable to Section 2511(a)(1) for the reasons expressed by the Supreme Court. Thus, for the reasons explained by the trial court in its opinion, which we incorporate herein, we find her argument lacks merit. *See* Trial Ct. Op. at 6-8 (unpaginated).

Next, we review Mother's second issue concerning Section 2511(b). This Court has stated that the focus in terminating parental rights under

Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re C.L.G.*, 956 A.2d at 1008.

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother asserts that Child had a very close bond with her and was not fearful of her. *See* Mother's Brief at 14. Mother contends that Child's current feelings toward her are relevant to a consideration of Child's emotional, physical, and developmental needs. *Id.* at 15. She argues that DHS has failed to establish a lack of a bond between Child and Mother without evidence that Child currently has a lack of feeling toward her. *Id.* at 14-15. Additionally, Mother claims that the termination of her parental rights will have a great effect on Child, both physically and emotionally, and will affect her development in the future, as it will have an impact on Child's identity with her Russian heritage. *Id.* at 15.

We find Mother's argument concerning Child's need to have her Russian heritage as a reason for precluding the termination of Mother's parental rights lacks merit. For the reasons articulated by the trial court, which we incorporate herein, we affirm the trial court's ruling that DHS sustained its burden under Section 2511(b). *See* Trial Ct. Op., 2/26/16, at 8-9 (unpaginated). Accordingly, we affirm the trial court decree with regard to Section 2511(a)(1) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2016

Received 03/17/2016 Superior Court Middle District

Filed 03/17/2016 Superior Court Middle District

RECORDED
JANE WETHERBEE 2016
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num        201600341

IN THE INTEREST OF                    :IN THE COURT OF COMMON PLEAS

S█████D███████M█████████,     : OF TIOGA COUNTY, PENNSYLVANIA

(AKA : S████H███████)

A MINOR CHILD                         :  NO. 6 ORPHANS COURT 2015

DECREE

And now this 4th day of January, 2016, upon consideration of the Petition for Involuntary Termination of Parental Rights, and after testimony and evidence received, the parental rights of L█████V██████M█████████ also known as L███H█████, are forever terminated as to the minor child, S█████D████████M█████████, also known as S████H███████ born April 27, 2003. Further proceedings in this matter shall proceed without further notice to the aforesaid mother.

The biological parent is advised of his continuing right to place and update personal and medical history information, whether or not the medical condition is in existence or discoverable at the time of adoption, on file with the Court and with the Department of Public Welfare pursuant to 23 Pa. C. S. A. 2905 (d).

BY THE COURT:

Honorable George W. Wheeler, P.J.

cc:  S. Olson, Esq

    T. Cummings, Esq.

    L. Urbano, Esq.

RECORDED
Filed 03/17/2016 Superior Court Middle District
JANE SCIARABBA 2016
REGISTER AND RECORDER
TIOGA COUNTY, PA
Pennsylvania
Inst Num        201600339

IN THE INTEREST OF                     :  IN THE COURT OF COMMON PLEAS


S███A D██████ M██████████     :  OF TIOGA COUNTY, PENNSYLVANIA

(AKA : S████H████████)

A MINOR CHILD                          :  NO. 6 ORPHANS COURT 2015


### FINDINGS, DISCUSSION AND DECREES ON PETITION FOR

### INVOLUNTARY TERMINATION

### OF PARENTAL RIGHTS


### Findings of Fact

1. S███D██████ M██████████, also known as S███ H██████, was born April 27, 2003. She is the natural child of L██████ V████████ M██████████, also known as L██ H████████ mother and D██████ H████████, father

2. S██████ was removed from the home of Mr. and Mrs. H██████ (M██████████) on April 10, 2013, by Order of this Court, pursuant to a Petition for Emergency Protective Custody.

3. S██████ has remained in placement with J██ and C██████ R████ since her removal from the H██████ home.

4. S██████ was adjudicated a dependent child on April 18, 2013.

5. S██████'s removal was the result, in part, of substantial concerns regarding Mrs. H██████'s ability to supervise her, particularly in the absence of Mr. H██████ who frequently left the Commonwealth for work obligations.

6. The events leading to the filing of the Petition for Emergency Custody were initiated by Mr. H██████'s call to Children and Youth Services in Tioga County regarding his concerns for S████'s safety due to Mrs. H██████'s drinking.

7. Mrs. H██████ has had no contact with S████ since her removal from the home.

8. Prior to the filing of the Petition for Termination of Parental Rights, Mrs. H██████ did not petition or otherwise request visitation with S████ through the Court.

9. Following S████'s removal from the home, the Tioga County Department of Human Services, Family Services Division (Family Services), has made available services, including Intensive Case Management (ICM).

10. Mrs. H██████'s participation was initially inconsistent and subsequently ended when she stopped participating in services and ended contact with Family Services.

11. Prior to the filing of the Petition, Mrs. H██████ had had no contact with Family Services since at least February 2014.

12. Mrs. H██████ has not provided gifts, cards or support in any way for S████ since her removal from the home.

13. Mrs. H██████ has not participated in S████'s medical or dental care since her removal.

14. Family Services provided services, including visitation to Mr. H██████.

15. Mr. H██████ maintained contact with Family Services through July 2014, since that time his only contact were messages he left with Mr. Brewer and Ms. Tarbox, in October 2014, which resulted in criminal charges of harassment being filed.

16. Mr. H██████'s visitation with S████ was suspended by court order following a hearing held May 23, 2014.

17. Mr. H█████has not provided gifts, cards or support in any way for S███ since at least May 23, 2014.

18. Mr. H█████has not participated in S███'s medical or dental care since prior to her removal.

19. After her removal from the H█████home, S███received substantial treatment and counseling to address her anxiety related to the abuse inflicted in the H█████ home.

20. S███ has also been fitted with hearing aids to assist with a previously untreated hearing loss.

21. S███ is safe and her needs are met in her placement with J██and C█████R███

22. S███ has bonded with the R███family and wants to be a part of it.

23. The R███are willing and able to adopt S███ and provide her a permanent home and family.


## DISCUSSION

S███ H█████is the child of D█████H█████ and L███H█████, also known as L█████ M█████ S███was removed from her home on April 10, 2013, pursuant to an Order of the Tioga County Court of Common Pleas granting a Petition for Emergency Custody. The Tioga County Department of Children and Youth filed the Petition following contact with S███and Mrs. H█████ on April 9, 2013. Workers from the Department went to the H█████ home after Mr. H█████phoned as he departed Tioga County for work in the western United States which would result in his being out of the area for several weeks. Mr. H█████advised the

Department that Mrs. H████ regularly consumed alcohol and that he was concerned for the well-being of S███ when she did so. A caseworker visited the home on the afternoon of April 9, 2013 and was greeted by S███ who reported that her mother was asleep. S███ had reported that her mother drinks a lot and sleeps a lot and says mean things, she also informed the caseworker that her mother had tried to kick her prior to school on the morning of April 8, 2013. At the request of the caseworker, S███ attempted several times to wake her mother but was unable to do so. Following these attempts, S███ led the caseworker to the neighboring home where a Mr. and Mrs. L███ were watching their grandchildren. Mr. and Mrs. L███, S███ and the caseworker returned to the H███ home and Mrs. L███ and S███ went inside. Mrs. L███ was eventually able to awaken Mrs. H████ who then came to the door in a robe to meet the caseworker. Mrs. H████ was reportedly unable to focus on the conversation and had blood-shot and glassy eyes. Mrs. H████ ultimately told the caseworker she had not been in bed but rather in the shower. Mrs. H████ initially admitted the caseworker to the home but then kicked her out. S███ went to the L███ home and spent the night.

Following the service of the Order granting emergency protective custody, Mrs. H████ did not appear for the shelter care hearing. Mrs. H████ did appear, with court appointed counsel, Daniel Stefanides, for the adjudicatory hearing held April 18, 2013. Mrs. H████ indicated, orally through counsel and in writing, that she did not require the services of an interpreter at the time of this hearing although one had been provided. During the course of the hearing, the caseworker, Christa Hilfiger, testified to concerns for S███'s safety due to Mrs. H████'s alcohol abuse, her anger and parenting concerns. Mr. H████ was not readily

available to protect and parent S█████ due to his absence from the state for weeks at a time for work. Following the hearing, the Honorable Robert E. Dalton, Jr., entered an Order of Adjudication finding S████ to be a dependent child. At the same time, apparently *suo sponte*, the Court ordered that Mrs. H██████ would have no visitation with S████ pending further order of court. No appeal was taken from the Order of Adjudication. Further, prior to the filing of the Petition for Termination of Parental Rights, Mrs. H██████ never requested reconsideration or modification of the order directing that she have no contact with the child. Mr. H████████ did not appear for either the shelter care or the adjudicatory hearings. On August 6, 2013 following continuances granted at the request of the H██████s, the initial permanency review hearing was held. Mr. and Mrs. H███████ both appeared for this proceeding and were accompanied by Attorney Jason Kutulakis, as privately retained counsel. Mrs. H██████ did not testify but Mr. H██████ did. Based upon a review of the records, it appears this is the last substantive proceeding Mrs. H██████ appeared at prior to the termination proceeding.

The next Permanency Review Hearing was conducted September 26, 2013. Neither Mr. nor Mrs. H██████ appeared but Attorney Kutulakis appeared as counsel for both. S████, her therapist, Ms. Marengo, and foster parent C████ R██ each testified. S████ was questioned by the guardian *ad litem* and explained the abuse inflicted by her mother and the fear resulting therefrom. Specifically, when questioned about black marks observed on her body, she explained

> [w]hen this happened – when I kind of got the bad grade, my mom, she got mad at me and she, she, she tried to hit me and she just keeps hitting me and it, it hurt me and she keep hitting me a lot...

S████ further testified to receiving a black eye when her mother got mad and pushed her down. She also described how she could tell when her mother had been drinking excessively, testifying "she get mean, kind of like crazy, kind of stupid. [s]he acts stupid to me, may get crazy, she being mean. [s]he just hit me." *Id.* at 9.

Mr. H█████ appeared for a subsequent review hearing on February 25, 2014 with Attorney Thomas Walrath, appointed counsel, as he was no longer represented by Attorney Kutalakis. During that hearing, Randy Brewer, S████'s caseworker, testified to on-going efforts to provide services to Mrs. H██████ but indicated she often would not answer the door or appear for scheduled appointments and that she refused to discuss issues related to the case when she did meet. He also testified that Mrs. H██████ had not raise the issue of visitation with S████ with him or anyone else at the Department. Mr. Brewer testified that Mr. H██████ was visiting with S████ when he was in Tioga County and had assisted in efforts to examine placement through the Interstate Compact. Mr. Brewer continued, however, that Mr. H██████ had now told him he "was not jumping through anymore hoops" and not taking part in services anymore. Mr. H██████ himself testified and noted that Mrs. H██████ has a drinking problem" and that he had talked to her about it, but it was still there. He added that he knew Mrs. H██████ was getting awful hard to get along with but that he did not know of her being violent with S████. He did however add that he knew Mrs. H██████ was "emotionally abusive" to S████.

Mr. H█████ continued to participate in visitation and phone contact with S████ through May of 2014. A series of events, including threats by Mr. H██████ against a Department

employee, led to a request that his visits be suspended. Mr. H█████ also appeared for that proceeding with Attorney Thomas Walrath. Mr. H█████'s visits were suspended following a hearing held before Honorable Joy Reynolds McCoy on May 13, 2014. Mr. H█████ neither requested reconsideration or modification of the order suspending his contact.

On July 1, 2014 following continuances, the next Permanency Review Hearing occurred in front of Judge McCoy. The order entered following that hearing noted that Mrs. H█████ had not been participating in hearings, that she had not met with or been in contact with the caseworker since the last hearing and that she was participating minimally in the ICM program. Mr. H█████ was present for the hearing and directed to undergo a psychiatric evaluation. Judge McCoy specifically addressed the temporarily suspended visits and directed that the matter be reexamined as soon as it was therapeutically recommended. Shortly after this hearing, Attorney Kutulakis withdrew as counsel for Mrs. H█████ and Attorney Tiffany Cummings was appointed to represent her.

Neither parent appeared for the October 28, 2014 hearing, also held before Judge McCoy. Judge McCoy's Order notes that S█████ was doing well in her foster home and that she feels part of the family and that she states "sometimes she forgets she is in a foster home and she is a foster child." Mr. H█████ was noted as not participating in any services and had not followed through with previously ordered psychiatric evaluation or had contact with the caseworker. Judge McCoy found "no compliance" with the permanency plan by Mrs. H█████ and "no progress" towards alleviating the circumstances leading to placement, her Honor specifically noted in the Order,

[i]f mother does not wish for her parental rights to be terminated it is imperative that mother immediately have contact with the Agency and begin some steps towards reunification with her daughter. The Court would note that up until this point mother has done nothing to alleviate the circumstances which led to the child's placement and has done nothing to work towards reunification.

Additional Permanency Review Hearings held in April and July of 2015, after the filing of the Petition for Termination of Parental Rights, and December of 2015, following the Hearing on the Petition, but prior to this decision, all went unattended by both parents.

The Department petitioned this Court seeking to terminate the parental rights of both Mr. and Mrs. H████ on January 27, 2015. Following numerous efforts to obtain personal service of the petition, Mr. H████ could not be located and this Court granted a motion to authorize service upon him by publication. Mrs. H████ similarly could not initially be located but ultimately was contacted in Russia and advised by this Court of the scheduled date for the proceeding.

The Court also directed that the Petition be translated by a certified interpreter and arranged for the services of a certified translator at the time of the hearing. On October 6, 2015 with the witnesses, attorneys and translator present, Mrs. H████ requested another continuance of the termination proceeding which the undersigned granted. The consolidated hearing as to the termination of both Mr. H████'s and Mrs. H████'s parental rights was conducted October 13, 2015. Mrs. H████ was present and represented by her attorney,

Tiffany Cummings, Mr. H███ did not appear but his attorney, Thomas Walrath Jr., was present.

In this case, Petitioner seeks termination of parental rights under Title 23, section 2511, subsections (a)(1), (a)(2), (a)(5), and (a)(8). Pursuant to (a)(1), Petitioner must establish...

[t]he parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. 23 P.S.§2511(a)(1)

During the Termination Hearing held October 13, 2015, the Court incorporated the prior records from this case in both Dependency and Orphans Court. The Court heard testimony from the caseworker, Mr. Brewer, service providers for the Hackfords, Mrs. C███ R███ and Mrs. H███.

In this particular case, Mr. H███ initially cooperated with the Department. Mr. H███ maintained contact, participated in the proceedings in Dependency Court and even pursued placement of S███ with relatives through the Interstate Compact. Most significantly however, Mr. H███ maintained contact and a relationship with his daughter. Mr. H███ had in-person, supervised visits with S███ when he was in Tioga County. At other times, he used telephone contact to remain involved in his daughter's life. Mr. H███ participated in a least one meeting relating to services being provided by S███'s school. Unfortunately, Mr. H███'s communication with the Department deteriorated, resulting in threats, the eventual suspension of his visitation with S███ and, finally, in criminal charges being filed as a result of

his threats and invectives directed at Mr. Brewer, S████'s caseworker. According to the credible testimony presented at the termination hearing, Mr. H████████s had no contact with S████ since a medical appointment in mid-July 2014, and no visitation since prior to the order suspending visitation. Mr. H██████'s last direct contact with the Department occurred in July 2014 during a phone call to Mr. Brewer. He has had no contact with her caseworker, Mr. Brewer, since October 28, 2014 when he left messages with Mr. Brewer and another employee of the Department, Judy Tarbox, which ultimately resulted in criminal charges being filed against him. Mr. H██████ did not appear for scheduled court proceedings in that case and is currently a fugitive. Mr. H██████ has not provided any means by which he can be contacted, and efforts to do so through relatives have been unsuccessful.

Mr. H██████'s total lack of contact with S████ from mid-July, 2014 through the filing of the Petition now before the Court clearly demonstrates a failure and refusal on his part to perform his parental duties. While it can be fairly argued that the May 13, 2014 order suspending his visits was an impediment, it in no way prohibited him from maintaining contact with the Department. Additionally, the order did not prevent him from providing support indirectly to S████ through delivery of appropriate cards, letters or other items to the Department for her. Further, the Order suspending his visitation provided that the matter be reconsidered at the time of the next scheduled Permanency Review hearing on June 17, 2014 and ordered that Mr. H██████ undergo a psychological evaluation, as well as a drug and alcohol evaluation prior to that hearing. Mr. H██████ did obtain the evaluations and appeared on July 1, 2014 at the rescheduled Permanency Review hearing. Judge McCoy maintained the temporary suspension but emphasized that phone contact would be available at the child's

request. Judge McCoy further ordered that Mr. H██████ndergo a psychiatric evaluation based upon the recommendation contained in the psychological evaluation previously conducted. Mr. H█████ailed to appear for the scheduled appointment and has never undergone the evaluation or appeared for any further proceeding in the case. Finally, as to the suspension of his visits, Mr. H██████has taken no action to request reconsideration or modification of the Order, he has simply cut off all communication and disappeared. The Department has clearly met its burden in establishing grounds for termination of Mr. H██████s parental rights pursuant to Title 23, section 2511 (a)(1).

Turning to Mrs. H██████ the Department seeks termination of her parental rights under the same provisions. The Court will first address subsection (a)(1).

Mrs. H██████ appeared at the Adjudicatory hearing in this case on April 18, 2013. She later appeared for a Permanency Review hearing on August 6, 2013. According to her testimony, Mrs. H██████ast appeared in Court proceedings in this case in approximately April of 2014 to request a continuance of a scheduled hearing. Following the April 2014 appearance, Mrs. H██████left Pennsylvania, first traveling to Rhode Island, then proceeding to Ukraine and later Russia. According to her counsel's statements to this Court on October 6, 2015, in support of a final continuance request, she did not return to the United States until shortly before the scheduled hearing. During her daughter's placement, Mrs. H██████had absolutely no contact with S██████. Her counsel notes that an Order of this Court directed that she have no contact, however, as with Mr. H██████ Mrs. H██████made no effort whatsoever to have that Order reconsidered or modified. She provided no support, emotional, financial, or otherwise, to her

daughter through the Department. Further, she failed to complete services that were offered to her to address the concerns leading to the initial finding of dependency. Lastly, Mrs. H████ left not just Pennsylvania, for perhaps good reason, but provided no contact information for the Department or anyone else and only after extensive efforts and numerous continuances did she even appear for the termination hearing. She testified during the Termination hearing that she is now willing to accept services and will do whatever needs to be done but it is too little, too late. The conduct of Mrs. H████ from at least April of 2014 represents a total failure on her part to meet any of the responsibilities and duties of a parent. The Department has met its burden.

Having found the Department has established a statutory basis for termination, the Court must now turn to Section 2511 (b) and consider the "developmental, physical and emotional needs and welfare" of S███. Mr. H████'s actions have left S███ without emotional or financial support from him for a long period of time. S███ clearly had some bond with both of her parents. Mr. H████ maintained involvement with S███ for more than a year after her removal from the home. However, S███ has now resided with the R███ for over two and one-half years. Additionally, by simply refusing to participate in services or even court proceedings and cutting off all avenues of communication with the Department, Mr. H████ has also deprived S███ of contact, even by phone. Mrs. H████ has had no contact with S███ in over two years. S███ has undergone extensive counseling as a result of her relationship with her mother. At this late date, there is no meaningful relationship between Mrs. H████ and S███,

and maintaining the current circumstance is not in her best interest. The conclusion of Dr. Howard Rosen, Ph.D., a licensed psychologist who evaluated S███ in May of 2014 at the request of her mother's counsel remains applicable even today,

> [d]espite fears and worries S███ is doing well at the job of being a child. She has same age peers, she does well academically in school, she is involved in extracurricular activities, she functions well in her foster household and she is enrolled in a variety of community activities. She has been mistreated and neglected by her parents and while she has been physically removed from their care to insure safety, she continues to be abused by coercion, blame and feelings of loss and separation.....

Petitioner's Exhibit 1, October 13, 2015, Report of Howard S. Rosen, Hempfield Behavioral Health, previously admitted as Guardian's Exhibit 1, July 1, 2014, Permanency Review Hearing, No. 20 DP 2013

Conversely, according to the testimony presented, S███ considers herself to be and is treated as a member of the R███ family. She refers to the R███ as mom and dad. A clear and strong bond exists between S███ and the R███ family. Mr. and Mrs. R███ have indicated a willingness and desire to adopt S███. The R███ have made a significant long term commitment to S███. S███'s well-being and best interests are clearly supported by the termination of both Mr. H███'s and Mrs. H███'s parental rights and the permanency and stability offered in the R███ Home. The ongoing harm suffered by S███ due to uncertainty and instability which would occur in the absence of the termination of both Mr. and Mrs. H███'s parental rights far outweighs any speculative harm which might be occasioned by the termination at this time. As a child in the custody of the Department and under the supervision of the Court pursuant to a finding of dependency, S███ is entitled to the love, support and

permanency offered in the R███home rather than the continued uncertainty she suffers now as all wait for Mr. and Mrs. H███████ alone to determine whether or not either or both of them wishes to return to the responsibilities and obligations each owes her as a parent

Accordingly, the Department has established by clear and convincing evidence that the parental rights of both D██████H█████ and L███ H█████should be terminated. The Court further finds that it is in the best interest of S████ that their parental rights be terminated, as such an appropriate Decree as to each follows.

BY THE COURT,

Honorable George W. Wheeler, P.J.

January 4, 2016

cc: S. Olson, Esq

T. Walrath, Esq.

T. Cummings, Esq.

L. Urbano, Esq.